**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 1:20-CR-0032-01 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| BRANDON HARRIS | : | |
| | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is Defendant Brandon Harris' motion to vacate or set aside his conviction under 28 U.S.C. § 2255.  (Doc. 201.)  Harris argues that his appellate counsel was ineffective for not challenging his conviction under 18 U.S.C. § 924(c) due to lack of an adequate predicate crime of violence and failing to challenge various aspects of his sentence on appeal.  (*Id.*)  For the reasons stated below, the motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 6, 2019, Defendant recruited David Rinehardt ("Rinehardt"), age 19, to travel from North Carolina to Pennsylvania to rob stores in Harrisburg, Pennsylvania.  (Doc. 136, p. 5.)[1]  Rinehardt committed these robberies with another teenager, K.M., age 17.  (*Id.*)  At approximately 8:45 p.m. on April 6, 2019, Harris and co-defendant Childes Neely ("Neely") joined the two teenagers, and the group arrived at the Sayford Market in Harrisburg, where three of them

---

[1] For ease of reference, the court utilizes the page number contained in the CM/ECF header.

entered the store wearing black masks, black gloves, and hooded sweatshirts.  (*Id.*)
Two of the men had handguns while another had an AR-15 style rifle.  (*Id.*)  All
three pointed their guns at either an employee or a customer.  (*Id.*)  They stole
approximately $100 from the cash register.  (*Id.*)  Neely was the getaway car
driver.  (*Id.*)

At approximately 9:10 p.m. on the same date, the group moved on to Al's
Café, wearing the same clothing and brandishing the same weapons.  (*Id.*)  One of
the men jumped over the counter and took the bartender's tip jar.  (*Id.*)  They stole
two cellphones and a wallet from various customers.  (*Id.*)

Next, the group went to the Beer King at approximately 9:41 p.m.  (*Id.* at 6.)
Three of them entered the store wearing masks and brandishing firearms.  (*Id.*)
The customer in the store at the time reported that one of the individuals held a
firearm to his back and demanded money; the customer complied by giving them
$14.  (*Id.*)  The armed robbers then forced the employees, at gunpoint, to open the
cash registers.  (*Id.*)  They obtained $1,619.  (*Id.*)

Two days later, on April 8, 2019, five individuals: Harris, Neely, K.M.,
Rinehardt, and Kendrick Groover-Floyd, robbed a Rite Aid wearing masks and
hooded sweatshirts.  (*Id.*)  Rinehardt and Neely possessed firearms.  (*Id.*)  Harris
demanded the pharmacist give him drugs, and she gave him Oxycodone,
Morphine, Hydrocodone, and Percocet.  (*Id.*)  These medications were valued, in

total, at $7,601.85.  (*Id.*)  There was a GPS tracking device in one of the

medications.  (*Id.*)  They also obtained $1,544.32 from the cash registers by

holding the employees at gunpoint.  (*Id.*)

Law enforcement followed the Rite Aid tracking device to a residence on

North 6th Street in Harrisburg.  (*Id.*)  Rinehardt and K.M. were located fleeing the

area and apprehended with $1,504 in a plastic shopping bag.  (*Id.*)  A protective

sweep of the residence led to locating Harris in the second-floor bedroom, along

with firearms and black masks and clothing items.  (*Id.* at 7.)  The bag containing

the prescription medications was discovered on the roof of a nearby residence.

(*Id.*)

On February 5, 2020, Harris and Neely were charged by indictment with one

count of conspiracy to commit Hobbs Act robbery,[2] three counts of Hobbs Act

robbery,[3] three counts of possession of firearm in furtherance of Hobbs Act

robbery,[4] one count of conspiracy to commit robbery involving controlled

---

[2] The overt acts in furtherance of the conspiracy to commit Hobbs Act robbery are the robberies of Sayford Market, Al's Café, and the Beer King.  (Doc. 1.)

[3] These counts all charge violations of 18 U.S.C. § 1951, interference with commerce by robbery.  Count 2 charges Hobbs Act robbery of Sayford Market.  Count 4 charges Hobbs Act robbery of Al's Café.  Count 6 charges Hobbs Act robbery of the Beer King.  (Doc. 1.)

[4] These counts charge violations of 18 U.S.C. § 924(c).  Count 3 charges possession of firearm in furtherance of Hobbs Act robbery as alleged in Count 2 (Sayford Market).  Count 5 charges possession firearm in furtherance of Hobbs Act robbery as alleged in Count 4 (Al's Café.)  Count 7 charges possession of firearm in furtherance of Hobbs Act robbery as alleged in Count 6 (Beer King).  (Doc. 1.)

3

substances, one count of robbery involving controlled substances, one count of possession of firearm in furtherance of a robbery involving a controlled substance, and one count of possession of firearm by a prohibited person.  (Doc. 1.)  Harris had his initial appearance and arraignment on February 6, 2020, during which he entered a plea of not guilty.  (Doc. 17.)  Thereafter, on July 22, 2020, the government filed a superseding indictment, adding charges against co-defendant Kendrick Groover-Floyd.  (Doc. 31.)

On September 1, 2021, Harris pleaded guilty, pursuant to a plea agreement, to Counts 1, 7, and 8 of the superseding indictment.  (Doc. 112.)  Importantly, at the change of plea hearing, the court undertook a lengthy colloquy with Harris in order to clarify to what charges exactly he was pleading guilty.  The original plea agreement stated that Harris was going to plead guilty to Counts 1, 5, and 8.  (Doc. 103.)  At the change of plea hearing, after listening to government counsel's proffer of facts supporting the charges, the defendant did not wish to plead guilty to Count 5, possession of firearm in furtherance of Hobbs Act robbery of Al's Café because he contended he was not present at that robbery.  (Doc. 166, p. 30.)  Thus, the court undertook a detailed colloquy regarding each charge.

For count 1, conspiracy to commit Hobbs Act robbery, the court asked Harris:

[THE COURT]: [F]ocusing just on Count 1 and whether Mr. Harris was willing to agree that he knowingly and intentionally conspired with

other[s] to commit the three robberies that are listed in–as overt acts in Count 1.  Mr. Harris, do you agree with those facts?

[DEFENDANT]: Yes.

[THE COURT]: Okay.  And you agree that those elements could be proved by the government and that those facts are true on Count 1?

[DEFENDANT]: Yes.

(*Id.* at 33.)

The court then proceeded to discuss the guilty plea regarding Count 5.  The court asked Harris if he admitted to the facts, as described by the government, that he "knowingly possessed and brandished a firearm in furtherance of the Al's Café robbery[.]"  (*Id.* at 34.)  Through his counsel, Harris disagreed that he was in Al's Café.  (*Id.*)  After an off the record discussion by counsel, the parties agreed to amend the plea agreement, such that Harris would plead guilty to Count 7, rather than Count 5.  (*Id.*)

 Specifically, Government counsel advised:

[GOVERNMENT COUNSEL]: [W]e should probably amend the plea agreement to instead of having a plea to Count 5, have a plea to Count 7, which is the exact same charge, the same elements, and the same general specifics as Count 5, with the exception that instead of brandishing a firearm at Al's Café, which is what Count 5 alleges, Count 7 alleges brandishing a firearm at the Beer King. **And the object of Count 7's 924(c) offense is the Hobbs Act Robbery alleged in Count 6 of the superseding indictment.**"

[THE COURT]: All right.  I understand the proposal, so let me ask [defense counsel], from your perspective–and then I'll turn to Mr. Harris–do you believe your client would admit to the facts underlying

Count 7, which is possession of a firearm in furtherance of a Hobbs Act robbery, namely the robbery at the Beer King on April 6th, 2019?"

[DEFENSE COUNSEL]: Yes, Your Honor, he would agree to plead to Count 7.

[THE COURT]: All right.  So let me put it to you this way, Mr. Harris. **Do you admit you knowingly possessed and brandished a firearm in furtherance of a federal crime of violence, specifically the Hobbs Act robbery at the Beer King which is described at Count 6 of the superseding indictment? It occurred on April 6th, 2019, at Beer King at 609 Division Street in Harrisburg.  Do you admit that crime?**

*(Counsel and Defendant confer)*

[DEFENDANT]: I agree.

(*Id.* at 35–36.) (emphasis added).

Accordingly, the government made an oral motion to amend the plea agreement, which the court granted.  (*Id.* at 36.)  The court then specifically reviewed Count 8, and Defendant agreed to plead guilty to Count 8.  (*Id.* at 37.)  Finally, the court asked Defendant if, after everything discussed that day, he wished to plead guilty to Counts 1, 7, and 8, and Defendant agreed.  (*Id.*)

On January 28, 2022, Defendant was sentenced to 192 months of imprisonment.  (Doc. 153.)  He received 108 months on Counts 1 and 8, to run concurrently with each other, and 84 months on Count 7 to run consecutively with the sentence on Counts 1 and 8.[5]  (*Id.*)  These sentences were also to be served

---

[5] The sentence on Count 7 is statutorily required to be 84 months and run consecutively with any other sentence imposed.  18 U.S.C. § 924 (c).

consecutively with any sentences imposed on outstanding state court cases for unrelated conduct. (*Id.*) Both at sentencing and in a sentencing memorandum filed by counsel on his behalf, Defendant requested a variance below the guidelines range on Counts 1 and 8. (Docs. 146, 167.) Defense counsel, among other things, specifically argued that there was a need for incremental punishment in this case, given that a sentence at the bottom of the guidelines range would be eight times longer than Harris had ever spent incarcerated. (Doc. 167, p. 14.)

After hearing Defendant's argument and witnesses and the government's argument, the court imposed a sentence at the bottom of the guidelines range and gave its reason for doing so on the record. (*Id.*) The court looked to the fact that Defendant recruited two teenagers to commit these robberies with him and that he was out on bail on five separate offenses at the time. (*Id.* at 22–23.) The court also looked at Defendant's upbringing and his time in the juvenile justice system. (*Id.* at 24.) The court addressed a possible sentencing disparity, explaining why co-conspirator Rinehardt's 27-month sentence consecutive to the mandatory 84 months on brandishing a firearm count was appropriate due to differing criminal histories, differing sentencing judges, and the fact that Defendant recruited Rinehardt to participate in the conspiracy. (*Id.* at 25–26.) The court found that a minimum guideline sentence running consecutive with the mandatory minimum sentence on Count 7 was sufficient, but not greater than necessary to achieve the

sentencing objectives, specifically just punishment for a serious offense.  (*Id.* at 26.)

The court also specifically responded to the request for a variance due to the need for incremental punishment.  (*Id.* at 27.)  The court found this would likely be a compelling argument for a variance if the court only had to consider the sentencing objective of deterrence; however, because the court must consider all of the purposes under § 3553(a), including protecting the public, providing just punishment for serious offense conduct, and affording Defendant treatment opportunities, a sentence at the bottom of the guidelines range was appropriate. (*Id.* at 27–28.)

Finally, the court addressed arguments regarding whether the sentence imposed in this case would run consecutively with any sentences yet to be imposed in state court cases.  (*Id.* at 28.)  The court ordered that this sentence run consecutive with any sentences to be imposed in Dauphin County Court of Common Pleas for dockets that are not related to the instant case, but concurrently to any sentence possibly imposed for related conduct.  (*Id.* at 28–29.)

Mr. Harris filed a notice of appeal on February 11, 2022.  (Doc. 160.)  On appeal, Defendant argued that his sentence was substantively unreasonable in violation of 18 U.S.C. § 3553(a)(6) for failing to avoid unwarranted sentencing disparities.  (Doc. 196-1, p. 3.)  On November 3, 2022, the Third Circuit reviewed

this challenge under an abuse of discretion standard and found that the court did not abuse its discretion because it articulated several factors on the record that set Defendant apart from his co-conspirators.  (*Id.* at 4.)  The Third Circuit's mandate was entered on November 25, 2022.  (Doc. 196.)

On September 15, 2023, Defendant filed the instant motion to vacate or set aside conviction or correct sentence under 28 U.S.C. § 2255(f)(1).  (Doc. 201.) This court ordered the government to respond, which it did on October 10, 2023. (Docs. 202, 205.)  Harris filed a reply brief on November 14, 2023.  (Doc. 208.) Accordingly, the motion is ripe for review.

### STANDARD OF REVIEW

Section 2255 allows a prisoner who is in custody to challenge his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack." 28 U.S.C. § 2255.  Accordingly, the United States Court of Appeals for the Third Circuit has held that, "[a] § 2255 motion is a proper and indeed the preferred vehicle for a federal prisoner to allege ineffective assistance of counsel."  *United States. v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994) (citing *United States v. Sandini*, 888 F.2d 300, 311-12 (3d Cir. 1989)); *see also United States v. Molina*, 75 F. App'x 111, 113 (3d Cir. 2003) ("Because they are often highly fact-bound, claims of ineffective assistance of counsel are generally not considered on direct appeal. . . .

Instead, 'the proper avenue for pursuing such claims is through a collateral proceeding in which the factual basis for the claim may be developed'") (internal citations omitted).

The Sixth Amendment to the United States Constitution guarantees the right of every criminal defendant to effective assistance of counsel. Under federal law, a collateral attack upon a conviction or a sentence based upon a claim of ineffective assistance of counsel must satisfy a two-part test established by the Supreme Court. Specifically, to prevail on a claim of ineffective assistance of counsel, a petitioner must establish that: (1) the performance of counsel fell below an objective standard of reasonableness; and (2) but for counsel's errors, the result of the underlying proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 691–92 (1984). A petitioner must satisfy both *Strickland* prongs to prevail on a claim of ineffective assistance of counsel. *George v. Sively*, 254 F.3d 438, 443 (3d Cir. 2001). This standard also applies to appellate counsel. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

At the outset, *Strickland* requires a petitioner to "establish first that counsel's performance was deficient." *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001). This threshold showing requires a petitioner to demonstrate that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment. *Id.* Additionally, the petitioner must demonstrate that counsel's

representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* However, in making this assessment "[t]here is a 'strong presumption' that counsel's performance was reasonable." *Id.* (quoting *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996)).

But a mere showing of deficient performance by counsel is not sufficient to secure habeas relief. Under the second *Strickland* prong, a petitioner also "must demonstrate that he was prejudiced by counsel's errors." *Id.* This prejudice requirement compels the petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A "reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome." *Id.*

Thus, as set forth in *Strickland*, a petitioner claiming that his criminal defense counsel was constitutionally ineffective must show that his lawyer's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689). The petitioner must then prove prejudice arising from counsel's failings. "Furthermore, in considering whether a

petitioner suffered prejudice, '[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006) (quoting *Strickland*, 466 U.S. at 696).

## DISCUSSION

Harris raises three issues in his motion.  First, Harris argues that his appellate counsel was ineffective for failing to argue that his § 924(c) sentence cannot be predicated on his conviction for conspiracy to commit Hobbs Act Robbery, under Supreme Court precedent *Davis v. United States*, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 142 S. Ct. 2105 (2022).  (Doc. 201.)  Second, he argues that his counsel was ineffective for failing to raise an argument regarding the need for incremental punishment on appeal.  (*Id.*)  Third, he argues that his counsel was ineffective for failing to challenge his federal sentence running concurrent with yet to be imposed state sentences.  (*Id.*)

The government responds that counsel could not have raised a challenge under *Davis/Taylor* because the §924(c) conviction was predicated on a completed Hobbs Act robbery.  (Doc. 205.)  Also, the government responds that counsel was not ineffective for failing to raise challenges to Harris' sentence on incremental punishment or whether his federal sentence should run concurrently to his yet to be

imposed state sentences grounds because such challenges would not have been successful due to the court's reasonable explanation of its decision at the sentencing hearing.  (*Id.*)  The court will address each of Harris' arguments in turn.

### A. Section 924(c) Predicate Crime

Harris argues that his appellate counsel was ineffective for failing to challenge his conviction on Count 7, possessing a firearm in furtherance of a crime of violence.  Harris contends that this conviction should have been challenged on appeal because his plea agreement and colloquy were ambiguous regarding which crime of violence was the predicate crime and that he otherwise pleaded guilty to a conspiracy crime, which, under *Davis* and *Taylor*, can no longer be considered predicate crimes for a § 924(c) violation.  (Doc. 201, p. 2.)  The Government responds that Harris mistakenly believes the predicate crime of violence for his § 924(c) conviction is a conspiracy, when it is actually a completed Hobbs Act robbery, which the Third Circuit has definitively held constitutes a predicate crime of violence for § 924(c) charge.  (Doc. 205, p. 3) (citing *United States v. Stoney*, 62 F.4th 108, 113 (3d Cir. 2023).

This issue arises from Harris's conviction under 18 U.S.C. § 924(c), which provides for a mandatory minimum sentence of at least five years to be imposed consecutively to any other sentence of imprisonment imposed if "during and in relation to any crime of violence or drug trafficking crime . . . for which the person

may be prosecuted in a court of the United States, [the person] uses or carries a

firearm, or . . .  in furtherance of any such crime, possesses a firearm . . . .”

Accordingly, in order for subsection (c) to apply, the government must “prove that

the person committed a qualifying predicate crime of violence[;]” however, they

“need not be separately charged with or convicted of the predicate crime.” *United

States v. Stoney*, 62 F.4th 108 (3d Cir. 2023).  Section 924(c)(3) defines a “crime

of violence” as “an offense that is a felony and–(A) has as an element the use,

attempted use, or threatened use of physical force against the person or property of

another, or (B) that by its nature involves a substantial risk that physical force

against the person or property of another may be used in the course of committing

the offense.”  18 U.S.C. § 924(c)(3)(A), (B).

However, the Supreme Court has invalidated subsection (B) as

unconstitutionally vague.  *Davis*, 139 S. Ct. at 2327–30.  Applying this decision,

the Supreme Court recently held that an attempted Hobbs Act robbery does not

satisfy subsection (A) (“the elements clause”) because, in order to prove an

attempted Hobbs Act robbery, the government does not need to prove an element

of violence, but rather, need only prove that “[t]he defendant intended to

unlawfully take or obtain personal property by means of actual or threatened force,

and [] he completed a ‘substantial step’ towards that end.” *Taylor*, 142 S.Ct. at

2020.  Therefore, because the government is not required to prove any use,

attempt, or threat of physical force, an attempted Hobbs Act robbery cannot be a predicate crime of violence for a § 924(c) charge. *Id.*

With the recent guidance of *Davis* and *Taylor*, the Third Circuit has subsequently decided:

> The Hobbs Act criminalizes a robbery that "obstructs, delays or affects" interstate commerce, 18 U.S.C. § 1951(a), by "the unlawful taking or obtaining of personal property from the person ... by means of actual or threatened force, or violence, or fear of injury." § 1951(b); *see also Taylor*, 142 S. Ct. at 2020. The key inquiry in applying the categorical approach here is whether a completed Hobbs Act robbery requires proof of "the use, attempted use, or threatened use of physical force." § 924(c)(3)(A). It does. This is the crucial difference between attempted and completed robbery.

*Stoney*, 62 F.4th at 113. Accordingly, "a completed Hobbs Act robbery is categorically a crime of violence under § 924(c)(3)(A)." *Id.* at 114.

As explained by the government, Harris mistakenly believes that his conviction for possession of a firearm in furtherance of a crime of violence relies upon his conspiracy to commit Hobbs Act robbery conviction in Count 1. However, the indictment and his guilty plea colloquy make clear that his § 924(c) conviction is predicated on the completed Hobbs Act robbery of the Beer King listed in Count 6.

In order to prove a predicate crime for § 924(c) purposes, the government must prove the person committed the qualifying predicate, but the defendant does not need to be separately charged or convicted with the crime. *United States v.*

*Galati*, 844 F.3d 152, 155 (3d Cir. 2016).  In the context of a guilty plea, the record must establish the predicate crime, so the court may look to the indictment, the plea agreement, and the factual proffer by the government.  *Stoney*, 62 F.4th at 112.

Here, Harris pleaded guilty to Count 7 of the superseding indictment. Which states as follows:

> 18 U.S.C. § 924(c) (Possession of Firearm in Furtherance of Interference with Commerce by Robbery) On or about April 6, 2019, in the Middle District of Pennsylvania, the defendants BRANDON HARRIS and CHILDES NEELY, did knowingly possess and brandish a firearm in furtherance of a crime of violence for which he may be prosecuted in a court of the United States, that is, **the crime of interference with commerce by robbery in violation of Title 18, United States Code, Section 1951 as alleged in Count 6**, and did aid and abet the same. In violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2.

(Doc. 31, p. 9.) (emphasis added).

At the guilty plea hearing, the government presented the following factual proffer regarding Count 6:

> Approximately a half an hour later, on that same night at 9:41 p.m., April 6th, 2019, the defendant, Mr. McHenry, and Mr. Rinehardt went to the Beer King located at 609 Division Street in Harrisburg.  Again, with their faces covered and again each with a firearm, they robbed two employees and one customer at the location. The loss from this robbery was approximately $1,600 in currency. At the time of this particular incident the Beer King was engaged in interstate commerce.

(Doc. 166, p. 27.)

Additionally, this issue was discussed at length at the change of plea hearing. As explained above, the initial plea agreement showed that Harris was going to plead guilty to Count 5, brandishing a weapon at Al's Café. However, Harris was adamant that he was not present or did not brandish a weapon at that location. Thus, the parties conferred and amended the agreement such that he was pleading guilty to Count 7, brandishing a weapon at Beer King. Because of the discrepancy as to which charge Harris wished to plead guilty to, the court engaged in a more detailed colloquy with him as quoted above, with the most salient portion as follows:

> [THE COURT]: Do you admit that you knowingly possessed and brandished a firearm in furtherance of a federal crime of violence, **specifically the Hobbs Act robbery at the Beer King which is described at count 6 of the superseding indictment?** It occurred on April 6th, 2019, at Beer King at 609 Division Street in Harrisburg. Do you admit that crime?
>
> *([Counsel] and the defendant confer.)*
>
> [DEFENDANT]: I agree.

*Id.* at 35–36. (emphasis added).

The record reflects that the predicate crime of violence for Count 7 is the completed Hobbs Act robbery of the Beer King described in Count 6. Pursuant to *Stoney*, a completed Hobbs Act robbery is a qualifying predicate crime of violence for a § 924(c) charge. To the extent that Harris argues it was unclear which crime his § 924(c) conviction was relying on, this assertion is contradicted by the record.

Accordingly, Harris' § 924(c) conviction properly rests on a completed Hobbs Act robbery, and therefore, his appellate counsel did not render ineffective assistance by failing to raise this issue.  Harris' motion will be denied on this ground.

### B. Incremental Punishment

Harris next argues that his appellate counsel was ineffective for failing to raise the incremental punishment argument that his counsel raised at sentencing on appeal.  (Doc. 201, p. 3.)  Harris cites three cases, *Dean v. United States*, 581 U.S. 62 (2017);[6] *United States v. Badoni*, 694 Fed. App'x 592 (9th Cir. 2017); and *United States v. McMurty*, 253 F. Supp. 3d 1027 (E.D. Wis. 2017), which he argues would result in his sentence being six months on Counts 1 and 8.  The government argues that his counsel was not ineffective because the court thoroughly addressed the incremental punishment argument on the record at sentencing and an appellate court would not overturn an exercise of the court's discretion which was reasonably addressed on the record.  (Doc. 205, p. 14.)

Initially, the court would like to address the cases Harris provided in support of this claim.  In *Dean*, the Supreme Court addressed the question of "whether, in calculating the sentence for the predicate offense, a judge must ignore the fact that

---

[6] The court notes that Harris actually cites to *Dean v. United States*, 556 U.S. 568 (2009).  This case held that "§ 924(c)(1)(A)(iii) requires no separate proof of intent.  The 10-year mandatory minimum applies if a gun is discharged in the course of a violent or drug trafficking crime, whether on purpose or by accident."  556 U.S. at 577.  However, because the 2007 case does not support Harris' contention, and *Badoni* cites to *Dean v. United States*, 581 U.S. 62 (2017), the court will construe Harris' argument as relying on the 2017 decision.

the defendant will serve the mandatory minimums imposed under § 924(c) [,]" and held that "[n]othing in [§ 924(c)'s] requirements prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense."  581 U.S. at 64, 71.  *Badoni* relied on this clarification and vacated and remanded an individual's sentence where the district court felt that it was not permitted to take the mandatory minimum on the § 924(c) charge into consideration when imposing sentence on the predicate offense. *Badoni*, 694 Fed. App'x at 593.

These cases do not show that Harris' appellate counsel was ineffective because they do not provide any basis for a different outcome on appeal.  First, Harris argues that *Dean* and *Badoni* support a challenge to his mandatory minimum consecutive sentence on Count 7 that would result in his sentence at Count 7 being completely vacated.  However, he misunderstands that, even if the court had made the error addressed in *Dean* and *Badoni*, the court would reconsider the sentence on that count and impose a new sentence.  The whole sentence would not be vacated with no new sentence being imposed.  Moreover, *Dean* and *Badoni* are inapplicable because Harris did not plead guilty to the predicate offense, and, thus, the court did not need to consider the mandatory minimum on the § 924(c) charge in crafting a sentence for a predicate offense.

Second, Harris relies on *McMurty* to argue that he should receive a sentence of 90 months, the same as the defendant in *McMurty* and that his appellate counsel should have raised this issue on appeal.  The defendant in *McMurty* pleaded guilty to two counts of Hobbs Act Robbery and one count of possession of firearm in furtherance of a crime of violence and had a different criminal history than Harris.  *McMurty*, 253 F.Supp.3d 1027.  The individualized sentence the defendant received in *McMurty* is not a basis for an appeal in the instant case because in imposing a sentence, a court must make an "individualized assessment [of the § 3553(a) factors] based on the facts presented."  *Gall v. United States*, 522 U.S. 38, 50 (2007).  Accordingly, the court will not wholesale adopt a sentence imposed on a completely different defendant who pleaded guilty to different charges.

Even if these cases provided any basis for a potentially meritorious issue on appeal, Harris was not prejudiced by his counsel failing to raise an incremental punishment argument on appeal.  As noted above, to show that he was prejudiced by counsel's errors, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

There is not a reasonable probability that raising an incremental punishment argument on appeal would have resulted in a different outcome.  The cases cited by

Harris do not show that there is a reasonable probability that there would be a different outcome than the one reached at sentencing.  Further, the incremental punishment argument was raised by defense counsel at sentencing and the court fully explained the reasons why it militated in favor of a sentence at the bottom of the guidelines range rather than a variance below the guidelines range.  (Doc. 167, pp. 27–28.)  Indeed, on the issue that Harris did raise on appeal, the Third Circuit affirmed the sentence imposed because the court "made a strong record which tethered Harris's sentence to the facts of the case, considered his prior record, and addressed his § 3353(a)(6) argument."  *United States v. Harris*, No. 22-1267, 2022 WL 16647761 at * 2 (3d Cir. Nov. 3, 2022).  Because such decisions are reviewed for abuse of discretion, and here the court fully explained its reasons for this determination on the record, it is unlikely that raising this argument on appeal would have resulted in a different outcome.  *See Gall*, 522 U.S. at 51; *United States v. Tomko*, 562 F.3d 448, 567–68 (3d Cir. 2009).  Harris' motion will be denied because he has not established prejudice.

### C. Concurrent or Consecutive with Not Yet Imposed State Sentences

Lastly, Harris argues that appellate counsel was ineffective for failing to challenge the court's decision to impose his federal sentence to run consecutively with any not yet imposed state sentence, citing *United States v. Swan*, 275 F.3d 272 (3d Cir. 2002); *Rios v. Wiley*, 201 F.3d 257 (3d Cir. 2000); *United States v.*

*Brannan*, 74 F.3d 448 (3d Cir. 1996), and U.S. SENT'G GUIDELINES MANUAL § 5G1.3(c) (U.S. SENT'G COMM'N 2016).[7]  (Doc. 201, p. 5.)  The government responds that this argument was addressed at the sentencing hearing, and counsel was not ineffective for failing to raise an argument challenging an aspect of Harris' sentence that would be reviewed for abuse of discretion where the court addressed these arguments reasonably at sentencing.  (Doc. 205, p. 15.)

Again, the court begins with the prejudice prong of the *Strickland* analysis. Here, this claim is also without merit, and there is not a reasonable probability that making this argument on appeal would have resulted in a different outcome. Initially, the cases cited by Harris apply a materially different version of the sentencing guidelines or are otherwise inapplicable.  *Swan*, 275 F.3d at 275 (applying the 2000 version of the guidelines with provision not in effect when Harris was sentenced); *Rios*, 201 F.3d at 260 (reviewing a court's determination of time credit); *United States v. Brannan*, 74 F.3d 448, 454 (3d Cir. 1996) (applying a previous version of the guidelines which required a different methodology for determining whether sentences for related conduct should be imposed consecutively or concurrently).

The version of § 5G1.3(c) in effect when Harris was sentenced provides:

_____

[7] The court will utilize the version of the Sentencing Guidelines in effect when Harris was sentenced.  The court does note that there is no difference between the version in use when Harris was sentenced and the current 2023 version with respect to this issue.

> If subsection (a) does not apply, and a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.

U.S. SENT'G GUIDELINES MANUAL § 5G1.3(c).  Here, the court specifically stated on the record that any sentence imposed in state court for related conduct should run concurrently with the instant sentence.  (Doc. 167, p. 29.)

To the extent that Harris challenges the court's determination to run his federal sentence consecutively to not yet imposed state sentences at unrelated state court dockets, the background commentary to § 5G1.3 provides:

> Federal courts also generally have discretion to order that the sentences they impose will run concurrently with or consecutively to other state sentences that are anticipated but not yet imposed. See [*United States v. Setser*, 566 U.S. 231, 236 (2012).] Exercise of that discretion however, is predicated on the court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable guidelines or policy statements issued by the Sentencing Commission.

U.S. Sent'g Guidelines Manual § 5G1.3 cmt. background.  Here, the court noted that it would impose the federal sentence consecutively to any not yet imposed sentence on unrelated state court dockets consecutively for the same reasons that it explained when considering the §3553(a) factors, specifically, that Harris posed a danger to himself and the community, and he has responded poorly to supervision previously.  (Doc. 167, p. 28.)

As with the sentencing challenge above, there is not a reasonable probability that raising this argument on appeal would have changed the outcome of his appeal.  That is because this determination would have been reviewed under an abuse of discretion standard and the court relied on the § 3553(a) factors when explaining its reasons for imposing his sentence consecutively to not yet imposed state sentences on for unrelated conduct.  Accordingly, there is not a reasonable probability that raising this argument would have changed the outcome of Harris' appeal, and Harris' appellate counsel was not ineffective.  His motion will be denied for this reason.

### D. Certificate of Appealability

The court will not issue a certificate of appealability because the court finds that Harris did not make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner meets this burden by showing that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]' "  *United States v. Tirado*, No. 08-44 Eric, 2011 WL 590115, at *4 (W.D. Pa. Feb. 10, 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  The court finds that Harris has not shown that reasonable jurists would disagree with the court's assessment of his claims.

## CONCLUSION

Harris' appellate counsel was not ineffective for failing to challenge his §
924(c) conviction or raise challenges to his sentence regarding issues fully
explained on the record during his sentencing proceeding.  An order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: January 2, 2024